JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

2:18-3635

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ROBERT STROUGO

**(b)** County of Residence of First Listed Plaintiff    NEW YORK COUNTY, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
KASKELA LAW LLC
201 KING OF PRUSSIA ROAD, SUITE 650
RADNOR, PA 19087    (888) 715 - 1740

## DEFENDANTS

LANNETT COMPANY, INC., TIMOTHY C. CREW
and MARTIN P. GALVAN

County of Residence of First Listed Defendant    PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 U.S.C. §§78j(b) and 78t(a)
Brief description of cause:
VIOLATION OF THE FEDERAL SECURITIES LAWS

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER AUG 24 2018

DATE
08/24/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

*MAK*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2:18cv 3635*

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: KASKELA LAW LLC, 201 KING OF PRUSSIA ROAD, SUITE 650 RADNOR, PA 19087

Address of Defendant: 9000 STATE ROAD, PHILADELPHIA, PA 19136

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/24/2018    _____    204351
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☑ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
(Please specify): _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*: _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify)*: _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, DAVID SEAMUS KASKELA , counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 08/24/2018    _____    204351
                    *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

AUG 24 2018

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

*MAK*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ROBERT STROUGO | : | CIVIL ACTION |
| v. | : | |
| LANNETT COMPANY, INC., ET AL. | : | NO. 18cv3635 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| AUGUST 24, 2018 | DAVID SEAMUS KASKELA | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (888) 715 - 1740 | (484) 258 - 1585 | skaskela@kaskelalaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AUG 24 2018

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STROUGO, Individually and On Behalf of All Others Similarly Situated, | Case No. 18CV3635 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| LANNETT COMPANY, INC., TIMOTHY C. CREW and MARTIN P. GALVAN, | **JURY TRIAL DEMANDED** |
| Defendants. | |

FILED

AUG 24 2018

By KATE BARKMAN, Clerk
Dep. Clerk

## CLASS ACTION COMPLAINT

Plaintiff Robert Strougo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lannett Company, Inc. ("Lannett" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Lannett securities between

February 7, 2018 through August 17, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Lannett develops, manufactures, packages, markets, and distributes solid oral (tablets and capsules), extended release, topical, and oral solution finished dosage forms of drugs that address a wide range of therapeutic areas. Lannett also produces, through its subsidiary Cody Laboratories, Inc., active pharmaceutical ingredients. Lannett derives the majority of its revenue from the sale of drugs that are bioequivalent to certain patented drugs once their patent expires. The Company's securities trade on the New York Stock Exchange ("NYSE") under the ticker "LCI".

3.      At all relevant times Lannett has had an exclusivity agreement with its primary supplier, Jerome Stevens Pharmaceuticals ("JSP"), owned and operated by the Steinlauf family, set to expire on March 23, 2019. JSP's products have historically accounted for at least one-third of Lannett's sales.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lannett faced a substantial risk of the loss of its exclusivity agreement with JSP; (ii) accordingly, Lannett's reported revenues were unsustainable, and (iii) as a result, Lannett's public statements were materially false and misleading at all relevant times.

2

5.     On August 20, 2018, prior to market opening, Lannett announced that its distribution agreement with JSP will not be renewed.

6.     On this news, Lannett's share price fell $8.15, or 60.3%, to close at $5.35 on August 20, 2018.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Lannett's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Lannett securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Lannett is incorporated in Delaware, with principal executive offices located at 9000 State Road, Philadelphia, Pennsylvania 19136. Lannett common shares are listed on the NYSE under the symbol "LCI".

14.     Defendant Timothy C. Crew ("Crew") has served as Lannett's CEO since January 2018.

15.     Defendant Marty P. Galvan ("Galvan") has served at all relevant times as Lannett's President of Finance, Chief Financial Officer and Treasurer.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Lannett SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

4

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Lannett develops, manufactures, packages, markets, and distributes solid oral (tablets and capsules), extended release, topical, and oral solution finished dosage forms of drugs that address a wide range of therapeutic areas. Lannett also produces, through its subsidiary Cody Laboratories, Inc., active pharmaceutical ingredients. Lannett derives the majority of its revenue from the sale of drugs that are bioequivalent to certain patented drugs once their patent expires.

19.     Certain of Lannett's products are manufactured by others—primarily JSP—and distributed by the Company.  Lannett currently has an exclusive ten-year distribution agreement with JSP covering four different product lines (the "JSP Distribution Agreement"). The JSP Distribution Agreement was first entered into in 2004.  On August 19, 2013, the JSP Distribution Agreement was amended, and is currently due to expire on March 23, 2019, for five years. During the Class Period, purchases of finished goods from JSP accounted for more than one-third of Lannett's inventory purchases.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins when the Company issued a press release dated February 7, 2018, attached as exhibit 99.1 to the Form 8-K filed with the SEC the next day, announcing the Company's financial and operating results for the second fiscal quarter ended December 31, 2018.  In the press release, Defendant Crew stated:

> Our record revenues for the second quarter reflect strong sales across several product categories… Our topline increased 19% from the preceding quarter and would have been even higher, but for the shorter than anticipated supply disruption for a key product by a competitor.

With regard to our fiscal 2018 second quarter bottom line, our adjusted earnings substantially benefited from recently enacted U.S. tax reform. We also anticipate our future results will be positively impacted by a lower effective tax rate.

Looking ahead, we recently commenced shipping an authorized generic version of Toprol-XL® (Metoprolol Succinate) Extended Release Tablets and expect over the next several months to launch a number of products, which include previously approved, as well as recently acquired or licensed, commercially ready products. *While we have revised several components of our outlook, we expect our profitability on an adjusted basis for the fiscal 2018 full year to slightly improve from our previous guidance.*

(Emphasis added.)

21.     The February 7, 2018 press release further stated, in relevant part:

For the fiscal 2018 second quarter, net sales were $184.3 million compared with $170.9 million for the second quarter of fiscal 2017. Gross profit was $87.5 million, or 47% of net sales, compared with $88.1 million, or 52% of net sales. Research and development (R&D) expenses increased to $10.7 million from $9.9 million for the fiscal 2017 second quarter. Selling, general and administrative (SG&A) expenses increased to $28.5 million from $18.1 million. Restructuring expenses were $1.0 million compared with $1.7 million. In the prior year second quarter, the company recorded an impairment charge of $23.0 million related to an acquired in-process R&D project. Operating income increased 37% to $47.1 million from $34.3 million. Interest expense declined to $20.7 million from $23.3 million for the second quarter of fiscal 2017. Income tax expense was $18.1 million compared with $3.5 million in the prior-year period. Net income attributable to Lannett was $14.0 million, or $0.37 per diluted share, compared with $8.2 million, or $0.22 per share, for the fiscal 2017 second quarter.

For the fiscal 2018 second quarter reported on a Non-GAAP basis, adjusted net sales were $184.3 million compared with $170.9 million for the second quarter of fiscal 2017. Adjusted gross profit was $96.7 million, or 52% of adjusted net sales, compared with $96.2 million, or 56% of adjusted net sales, for the prior year second quarter. Adjusted R&D expenses were $10.7 million compared with $9.9 million. Adjusted SG&A expenses were $20.9 million compared with $17.0 million. Adjusted operating income was $65.1 million compared with $69.3 million for the prior-year second quarter. Adjusted interest expense declined to $16.2 million from $17.9 million for the second quarter of fiscal 2017. Adjusted income tax expense was $10.5 million compared with $17.5 million in the prior-year period. Adjusted net income attributable to Lannett was $40.6 million, or $1.06 per diluted share, compared with $34.5 million, or $0.92 per diluted share, for the fiscal 2017 second quarter.

6

22. The same press release also provided the following revised financial guidance for fiscal year 2018:

> Based on its current outlook, the company revised its 2018 fiscal year financial guidance from November 6, 2017. The revised guidance for net sales and profitability is higher than the guidance provided on August 23, 2017, which did not include the impact of the supply disruption for a key product mentioned above.

| | GAAP | Non-GAAP Adjusted |
|---|---|---|
| Net sales | $680 million to $700 million, down from 710 million to $720 million | $680 million to $700 million, down from $710 million to $720 million |
| Gross margin % | 42% to 43%, down from 46% to 47% | 48% to 49%, down from 51% to 52% |
| R&D expense | $36 million to $38 million, down from $46 million to $48 million | $36 million to $38 million, down from $46 million to $48 million |
| SG&A expense | $79 million to $81 million, up from $78 million to $80 million | $71 million to $73 million, down from $77 million to $79 million |
| Integration and restructuring related expense | $4 million to $5 million, unchanged | $— |
| Interest expense and other | $77 million to $78 million, down from $85 million to $86 million | $62 million to $63 million, down from $66 million to $67 million |
| Effective tax rate | Approximately 39%, up from 35% | Approximately 27%, down from 35% |
| Capital expenditures | $45 million to $55 million, down from $65 million to $75 million | $45 million to $55 million, down from $65 million to $75 million |

23. On February 8, 2018, Lannett filed its Form 10-Q for the quarter ended December 31, 2017 (the "Q2 2018 10-Q"). For the quarter, the Company reported Net Sales of $184.3 million, and Gross profit of $87.5 million. The Company also reported that "[p]urchases of finished goods inventory from JSP accounted for approximately 39% of the Company's inventory purchases during the three months ended December 31, 2017 and 2016."

24. With respect to the JSP Distribution Agreement, the Q2 2018 10-Q merely stated, in relevant part:

> During the renewal term of the JSP Distribution Agreement, the Company is required to use commercially reasonable efforts to purchase minimum dollar

7

quantities of JSP products. There is no guarantee that the Company will be able to meet the minimum purchase requirement for Fiscal 2018 and in the future. If the Company does not meet the minimum purchase requirements, JSP's sole remedy is to terminate the JSP Distribution Agreement.

25.     The Q2 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Crew and Galvan, stating that the Q2 2018 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

26.     On the Company's earnings call with analysts for the second quarter of 2018, Defendant Crew discussed the Company's relationship with JSP, stating:

> I'm pleased to say that Arthur Bedrosian our former CEO has agreed to a strategic advisory role of the company. He will be focused on transitioning and *strengthening our relationships with our key alliance partners of JSP* and HTC among others. I'm happy to have him on board and look forward to continue to work together.

(Emphasis added.)

27.     On that same earnings call, an analyst asked Defendant Crew: "where do you stand on locking down an arrangement with JSP to secure your most important for now product over the longer term?" Defendant Crew responded:

> Let me start with the JSP, first obviously it's a critical important relation we look forward to expanding that relationship overtime. We obviously have a very long mutually beneficial relationship with the JSP, they are a significant shareholder and would be happy to add that to their share base. *I'm optimistic, because of the number of things we have going on between the two companies that there is a big need for us to continue to partner as we have in the past.*
>
> Please note as we've announced earlier and I noted in my remarks, we have retained Arthur to facilitate and guide exactly such transactions and conversations and transitions and look forward to doing that with them. The timeline of these sorts of transactions have their own pacing. But *it's clearly a priority and we're optimistic that we'll come to a good position in a relatively not too distant future.*

(Emphases added.)

28.     In response to a second question concerning the Company's relationship with JSP,

Defendant Crew responded, in relevant part:

> Again on -- there's two parties to the negotiation, we're going to have that conversation with them in terms of things that matter to them and things that matter to us. *I want to stress that as a long-term relationship with a lot of moving parts, shareholder relationships, share purchase opportunities which I think is disclosed in all of our documents and again working with doctors to find the way that makes sense for them and us in the way we move forward, as quickly as possible.*
>
> So there's a renewal component as it relates to the current contract, but we just sit down with them and find out whether the things that they most care about in order to make the productive conversation, so I won't speculate here on those moving parts but just *please trust that that it is an incredibly high priority for us and we are working with all the folks in the company before I came and a while I am here to make sure that comes through a great outcome for both parties.*

(Emphasis added.)

29.     On May 7, 2018, the Company issued a press release, attached as exhibit 99.1 to

the Form 8-K filed with the SEC on May 10, 2018, announcing the Company's financial and

operating results for the third fiscal quarter ended March 31, 2018.   In the press release,

Defendant Crew stated:

> We continue to make good progress executing on our strategic initiatives…During the quarter, we acquired five products from UCB and entered into three new agreements with our strategic alliance partners, which I am delighted to report have progressed and already created new revenue streams.  To further build out our product offering, earlier today we announced the acquisition of a portfolio of primarily oral solution medications, comprised of 23 approved Abbreviated New Drug Applications (ANDAs) and one pending ANDA.  Moreover, we have re-aligned and added depth and expertise to the management team, resulting in improved manufacturing output and a re-invigorated marketing plan to launch our products.
>
> With regard to our third quarter financial results, profitability on an adjusted basis exceeded our expectations.  Our financial performance reflected the discipline of lower adjusted operating expenses and a mix of positive and negative sales variances to a few of our key products.

9

Looking ahead, our plan is to launch over the next several weeks, and into fiscal 2019, a number of our previously approved and recently acquired or in-licensed products. While these launches will have a marginal financial benefit to our fiscal fourth quarter performance, we expect a more substantive impact on fiscal 2019 financial results. Also, we continue to be engaged in numerous discussions with existing and new potential partners to add even more products to our portfolio that will further diversify our revenues, provide affordable alternatives for our customers, and enhance our efficiencies and bottom line.

30.     The May 7, 2018 press release further stated, in relevant part:

For the fiscal 2018 third quarter, on a GAAP basis, net sales were $174.4 million compared with $165.7 million for the third quarter of fiscal 2017. During the third quarter of last year, the company recorded a $4.0 million adjustment to a settlement agreement with one of its customers, which resulted in total net sales for the prior-year period of $161.7 million. Gross profit was $67.1 million, or 38% of total net sales, compared with $72.4 million, or 45% of total net sales....

For the fiscal 2018 third reported on a Non-GAAP basis, adjusted net sales were $174.4 million compared with $165.7 million for the third quarter of fiscal 2017. Adjusted gross profit was $76.7 million, or 44% of adjusted net sales, compared with $85.5 million, or 52% of adjusted net sales, for the prior-year third quarter. Adjusted R&D expenses were $2.7 million compared with $8.3 million. Adjusted SG&A expenses were $14.1 million compared with $17.3 million. Adjusted operating income was $59.8 million compared with $59.9 million for the prior-year third quarter. Adjusted interest expense declined to $16.2 million from $16.7 million for the third quarter of fiscal 2017. Adjusted income tax expense was $13.2 million compared with $15.0 million in the prior-year period. Adjusted net income attributable to Lannett was $30.5 million, or $0.80 per diluted share, compared with $29.2 million, or $0.77 per diluted share, for the fiscal 2017 third quarter.

31.     The same press release also provided the following revised financial guidance for

fiscal 2018:

Based on its current outlook, the company's fiscal 2018 full year net sales and adjusted profitability is unchanged, although individual elements of its financial guidance from February 7, 2018 have been revised, as follows.

| | GAAP | Adjusted |
|---|---|---|
| Net sales | $685 million to $695 million, updated from $680 million to $700 million | $685 million to $695 million, updated from $680 million to $700 million |
| Gross margin % | Approximately 42%, down from 42% to 43% | Approximately 48%, down from 48% to 49% |
| R&D expense | $30 million to $32 million, down from $36 million to $38 million | $30 million to $32 million, down from $36 million to $38 million |
| SG&A expense | $79 million to $81 million, Unchanged | $71 million to $73 million, Unchanged |
| Integration and restructuring related expense | $4 million to $5 million, unchanged | $— |
| Loss on Sale of Intangible asset | $16 million | $ — |
| Interest expense and other | $79 million to $80 million, Up from $77 million to $78 million | $62 million to $63 million, Unchanged |
| Effective tax rate | Approximately 35%, down from approximately 39% | Approximately 28%, up from approximately 27% |
| Capital expenditures | Approximately $50 million, changed from the range of $45 million to $55 million | Approximately $50 million, changed from the range of $45 million to $55 million |

32. On the Company's earnings call with analysts for the third quarter of 2018, Defendant Crew discussed the Company's relationship with JSP as follows:

> Finally, with regard to the long standing partnership with Jerome Stevens, we continue to discuss with them a myriad of business matters of mutual interest to strengthen that partnership. We remain optimistic that Numbrino will be extended at the point in time that makes sense for both parties to do so.
>
> *So to summarize, I'm feeling very good about the rapid progress we're making to improve our overall operations and grow the business. We have strengthened the already talented management team and in several near term revenue streams and continue to pursue a number of additional opportunities to add even more product to our portfolio. Today, our progression has been well received by our employees, our partners and importantly, our customers.*

(Emphasis added)

33. On that same earnings call, an analyst asked Defendant Crew to address the "JSP situation, sort of the elephant in the room. . . . Just want to understand whether you're sounding confident about getting something done versus something that looks a particular way. Is there anything you're willing to say on that would be really helpful?" Defendant Crew responded:

11

Yeah. It's a big beautiful elephant. We embrace that as an organization. Look, I've met with the team, we speak with them regularly, they're terrific folks, they're savvy managers. We have a great dialog on an ongoing basis, all the various moving parts and I believe they are very supportive initiatives that we've been talking about. *I don't want to put the cart in front of the horse. Elephant side, but I'm optimistic that we'll get a chance to renew this agreement when it's right for, there is clearly nothing more important to our business than doing so and we'll continue to be focused on doing just that.*

(Emphasis added.)

34.     On May 8, 2018, Lannett filed its Form 10-Q for the quarter ended March 31, 2018 (the "Q3 2018 10-Q"). For the quarter, the Company reported Net Sales of $174.4 million, and Gross profit of $67.1 million. The Company also reported that "[p]urchases of finished goods inventory from JSP accounted for approximately 37% and 33% of the Company's inventory purchases during the three months ended March 31, 2018 and 2017, respectively."

35.     With respect to the JSP Distribution Agreement, the Q3 2018 10-Q again merely stated, in relevant part:

> During the renewal term of the JSP Distribution Agreement, the Company is required to use commercially reasonable efforts to purchase minimum dollar quantities of JSP products. There is no guarantee that the Company will be able to meet the minimum purchase requirements. If the Company does not meet the minimum purchase requirements, JSP's sole remedy is to terminate the JSP Distribution Agreement.

36.     The Q3 2018 10-Q contained signed certifications pursuant to SOX by Defendants Crew and Galvan, stating that the Q3 2018 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

37.     The statements referenced in ¶¶ 20-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.

12

Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

(i) Lannett faced a substantial risk of the loss of its exclusivity agreement with JSP; (ii) accordingly, Lannett's reported revenues were unsustainable, and (iii) as a result, Lannett's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

38.     On August 20, 2018, prior to market opening, Lannett issued the following press release:

> Lannett Company, Inc. today said that its distribution agreement with Jerome Stevens Pharmaceuticals (JSP), which expires on March 23, 2019, will not be renewed.
>
> "The Steinlauf family advised us this past Friday evening that they will not renew our agreement to distribute three JSP products: Butalbital, Aspirin, Caffeine with Codeine Phosphate Capsules USP, Digoxin Tablets USP and Levothyroxine Sodium Tablets USP, upon its expiration in March 2019," said Tim Crew, chief executive officer of Lannett. "The family has assured us of a continuous supply of the products through March of next year. These products remain valuable assets for us and are expected to significantly contribute to our financial performance in fiscal 2019.
>
> "While we are disappointed, and intend to redouble our continuing efforts to explore options for addressing our capital structure, we have been preparing for this contingency, knowing that this outcome was a possibility. Accordingly, we have been focused on improving our already strong base commercial business of more than 100 currently marketed products. Since the beginning of this year, we added new products to our offering and expanded our customer base. We continued to streamline our operations. Specifically, we successfully launched eight new products in the first seven months of calendar 2018, which we estimate will add net sales in excess of $50 million in fiscal 2019, and in addition to our launches, we completed several transactions to add more than 25 market-ready or near-market-ready product lines to our pipeline. Importantly, we continue to make excellent progress advancing other previously approved products toward launch and plan to commence marketing a substantial number of them in the coming months and throughout fiscal 2019.
>
> "In addition, in our current fiscal year, we have already submitted four drug applications associated with two product families, implemented a restructuring plan at our Cody Laboratories subsidiary and streamlined our product distribution function.

"Looking ahead, our team is actively evaluating a number of additional potential transactions to add even more products to our portfolio to grow revenues and profits, and diversify our business.  We have more than 20 owned and partnered drug product applications currently pending at the FDA, and anticipate a significant number of product approvals in fiscal 2019.  We also expect to expand restructuring initiatives to further reduce expenditures.  Finally, we are evaluating the impact of this contract ending in March 2019 on our goodwill."

39.   On this news, Lannett's share price fell $8.15, or 60.3%, to close at $5.35 on August 20, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lannett securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lannett securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Lannett or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lannett;

- whether the Individual Defendants caused Lannett to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lannett securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.  Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lannett  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lannett securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.  Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.  Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
Against All Defendants)**

49.     Plaintiff repeats and reallege each and every allegation contained above as if fully
set forth herein.

50.     This Count is asserted against Defendants and is based upon Section 10(b) of the
Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and
course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,
practices and courses of business which operated as a fraud and deceit upon Plaintiff and the
other members of the Class; made various untrue statements of material facts and omitted to state
material facts necessary in order to make the statements made, in light of the circumstances
under which they were made, not misleading; and employed devices, schemes and artifices to
defraud in connection with the purchase and sale of securities.   Such scheme was intended to,
and, throughout the Class Period, did:   (i) deceive the investing public, including Plaintiff and
other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of
Lannett securities; and (iii) cause Plaintiff and other members of the Class to purchase or
otherwise acquire Lannett securities and options at artificially inflated prices.   In furtherance of
this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the
actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the
Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly
and annual reports, SEC filings, press releases and other statements and documents described
above, including statements made to securities analysts and the media that were designed to

influence the market for Lannett securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lannett finances and business prospects.

53.     By virtue of their positions at Lannett, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lannett, the Individual Defendants had knowledge of the details of Lannett internal affairs.

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lannett. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lannett businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

18

the market price of Lannett securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning Lannett business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lannett securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.     During the Class Period, Lannett securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lannett securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lannett securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of Lannett securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

59.     Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of Lannett, and conducted and participated, directly and indirectly, in the conduct of Lannett business affairs.  Because of their senior positions, they knew the adverse non-public information about Lannett misstatement of income and expenses and false financial statements.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lannett financial condition and results of operations, and to correct promptly any public statements issued by Lannett which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lannett disseminated in the marketplace during the Class Period concerning Lannett results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lannett to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Lannett within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of Lannett securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of Lannett. By reason of their senior management positions and/or being directors of Lannett, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lannett to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Lannett and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lannett.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 24, 2018

Respectfully submitted,

**KASKELA LAW LLC**
D. Seamus Kaskela (PA Bar No. 204351)
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (888) 715 – 1740
Facsimile:  (484) 258 – 1585
Email: skaskela@kaskelalaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

22

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1. I, _Robert    Strougo_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Lannett Company, Inc. ("Lannett" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Lannett securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Lannett securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Lannett securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party and/or filed a complaint on behalf of a class under the federal securities laws in the following actions:

- *Strougo v. Roadrunner Transportation Systems Inc. et al.*, Docket No. 2:17-cv-00147 (E.D. Wis. Feb. 1, 2017).
- *Strougo v. Aegean Marine Petroleum Network Inc., et al.*, No. 18-CV-5165 (S.D.N.Y. June 8, 2018)

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___8/22/2018___
         **(Date)**

_____
**(Signature)**

_____
**(Type or Print Name)**

**LANNETT COMPANY, INC. (LCI)**                                              **STROUGO, ROBERT**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|------|------------------|------------------------|------------------------|
| **Strougo, Robert Account 1** | | | |
| 5/4/2018 | Purchase | 1,000 | $15.6950 |
| 5/7/2018 | Purchase | 1,500 | $15.7000 |
| 6/29/2018 | Sale | 1,000 | $13.9000 |
| **Strougo, Robert Account 2** | | | |
| 5/7/2018 | Purchase | 490 | $15.7748 |
| 5/17/2018 | Sale | 490 | $16.1500 |