# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT STROUGO** | : CIVIL ACTION |
| v. | : NO. 18-3635 |
| **LANNETT COMPANY, INC.,** *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　**November 30, 2018**

When two individual shareholders agreeing to jointly serve as lead plaintiff for a class of shareholders in a securities fraud case are challenged by a competing institutional investor as to their adequacy to serve as a lead plaintiff, we must examine whether the way in which the two person group formed or the manner in which it is constituted may preclude the duo from serving as lead plaintiff. While we need not engage in an extensive inquiry and the duo seeking lead plaintiff status need only make a prima facie showing today, we must be assured this duo will fairly and adequately protect the interests of the class including not being the sole creation or mere puppet of lawyers seeking to obtain the often-rewarding role of lead plaintiff counsel. Following oral argument and in the accompanying Order, we allow the sophisticated individual investors with significantly greater losses than the institutional fund to serve as lead plaintiffs in reliance upon their sworn statements of a pre-motion telephone conference defining their – and not the attorneys' – central role in directing the efforts to recover on their theories.

### I.　　Allegations

In 2004, Lannett Company, Inc. signed an exclusivity agreement with its supplier Jerome Stevens Pharmaceuticals set to expire on March 23, 2019.[1] On February 7, 2018, Lannett

announced financial and operating results for the second fiscal quarter.[2] In a press release, Lannett's Chief Executive Officer Timothy C. Crew represented "we expect our profitability on an adjusted basis for the fiscal 2018 full year to slightly improve from our previous guidance."[3] A day later, Mr. Crew stated on conference call Lannett was focused on "strengthening [its] relationship with our key alliance partners of [Jerome Stevens]."[4] Mr. Crew also stated with respect to Jerome Stevens "because of the number of things we have going on between the two companies that there is a big need for us to continue to partner as we have in the past."[5]

On May 7, 2018, Lannett announced its financial and operating results for the third quarter and on an earnings call discussing the results, Mr. Crew again addressed Lannett's relationship with Jerome Stevens: "I'm optimistic that we'll get a chance to renew this agreement when it's right for, there is clearly nothing more important to our business than doing so and we'll continue to be focused on doing just that."[6]

On August 20, 2018, Lannett announced it would not renew its distribution agreement with Jerome Stevens.[7] Lannett's stock then dropped more than $8.00, or more than sixty percent, causing losses for Lannett's investors.[8]

Robert Strougo sued Lannett, Mr. Crew and Lannett's Chief Financial Officer/Treasurer Martin P. Galvan on behalf of a class of similarly-situated individuals who purchased Lannett securities between February 7, 2018 and August 17, 2018 for violating the Securities and Exchange Act of 1934 (the Exchange Act). Mr. Strougo alleges Defendants made "materially false and misleading statements regarding [Lannett]'s business, operational, and compliance policies."[9]

A two-person group of shareholders and an institutional fund now move for appointment of lead plaintiff and lead counsel: (1) individual shareholders Soe Wong and Michael Hoeltzel for appointment as lead plaintiff group, Levi & Korsinsky LLP as Lead Counsel, and O'Kelly Ernst

& Joyce, LLC, as Liaison Counsel,[10] and (2) IBEW Local 89 Pension Fund for appointment as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.[11] We held extensive oral argument with experienced advocates.

## I. Analysis

IBEW argues only Messrs. Wong and Hoeltzel fail make a prima facie case for adequacy under Rule 23 because they fail to satisfy the additional factor we apply when the movant is a group. IBEW argues Messrs. Wong and Hoeltzel fail to declare they—independent of counsel—decided to move as a group before seeking counsel's direction. We disagree with IBEW as our court of appeals does not require this declaration. We find Messrs. Wong and Hoeltzel make a prima facie showing of adequacy, subject to more detailed review should they later move to certify a class of similarly situated shareholders. As they are presumptive lead plaintiffs and IBEW fails to rebut the presumption, we appoint Messrs. Wong and Hoeltzel lead plaintiffs and appoint their selected experienced counsel as lead counsel.

### A. We appoint Messrs. Wong and Hoeltzel as a lead plaintiff group.

We apply a two-step process for appointing the lead plaintiff: (1) we identify "the presumptive lead plaintiff, the person or group having the largest financial interest" and (2) we determine "whether the presumption has been rebutted by any member of the putative class."[12] We appoint Messrs. Wong and Hoeltzel lead plaintiff.

#### 1. Messrs. Wong and Hoeltzel are the presumptive lead plaintiffs.

We must first determine the presumptive lead plaintiff. Under the Private Securities Litigation Reform Act of 1995 (the Reform Act), we presume the lead plaintiff:

> is the person or group of persons that: (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

3

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.[13]

Three factors assist in determining the largest financial interest: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."[14]

Once we identify the movant with the largest financial interest, we determine whether the movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."[15] Our court of appeals instructs the movant need only make a prima facie case he satisfies typicality and adequacy under Rule 23.[16] If the movant with the largest financial interest makes this prima facie showing, we deem the movant the presumptive lead plaintiff.

### a. Messrs. Wong and Hoeltzel have the largest financial interest in relief sought by the class.

Messrs. Wong and Hoeltzel argue, and no one disputes, they have the largest financial interest in relief sought by the class, and each man individually has a larger financial interest than IBEW. We agree.

### b. Messrs. Wong and Hoeltzel satisfy the typicality and adequacy requirements under Federal Rule of Civil Procedure 23.

#### i. Messrs. Wong and Hoeltzel satisfy the typicality requirement.

Messrs. Wong and Hoeltzel argue they satisfy the typicality requirement. IBEW conceded this point at oral argument. We find Messrs. Wong and Hoeltzel satisfy the typicality requirement.

#### ii. Messrs. Wong and Hoeltzel satisfy the adequacy requirement.

Messrs. Wong and Hoeltzel also satisfy the adequacy requirement. At this stage, we determine whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between the movant's claims and those asserted on behalf of the class."[17] We also ask "whether the movant

4

has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel."[18]

When the movant is a group, we apply an additional adequacy factor: whether the "way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff."[19] Our court of appeals explained we may conclude a "group" could not sufficiently monitor counsel if the group "with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel."[20] We exercise our independent judgment but our inquiry need not be extensive.[21] If we determine either the way the group formed or the manner in which it is constituted would preclude this two-person group from fulfilling the fiduciary obligations of lead plaintiffs, we should not permit this two-person group to act as lead counsel. [22]

Messrs. Wong and Hoeltzel have an incentive to vigorously represent the claims of the class, as they have the largest financial interest and the class members' claims are identical to theirs. They have selected counsel with extensive experience in securities class action litigation.[23] We do not see, and IBEW has not argued, a conflict between Messrs. Wong and Hoeltzel's claims and the class members' claims. Messrs. Wong and Hoeltzel also aver they discussed the lawsuit, their interest in serving jointly as lead plaintiff, and their willingness to monitor proposed counsel during litigation.[24] As Messrs. Wong and Hoeltzel each separately would have significantly larger financial interests than IBEW, we do not find Messrs. Wong and Hoeltzel's counsel created the group to ensure their appointment as lead counsel.

### c. We decline to require an additional sworn statement to demonstrate adequacy by a two-person group with detailed declarations of promised vigilance and proof of the largest losses by a significant margin.

Asking us to strictly apply our Court of Appeals' direction in *Cendant*, IBEW argues Messrs. Wong and Hoeltzel fail to satisfy the additional adequacy factor applied when the movant is a group. IBEW argues to satisfy the adequacy requirement, Messrs. Wong and Hoeltzel must show they, not their proposed counsel, arrived at the idea to form the group. We agree with IBEW in part; we will apply *Cendant* but are not persuaded by the reasoning of other district courts in different fact scenarios possibly applying a heightened scrutiny at this initial stage to a two-person group's sworn declarations of their connection necessary to meet *Cendant's* adequacy test.

Our court of appeals in *Cendant* explained when the movant is a group, we apply an additional adequacy factor: whether the "way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff."[25] Providing an example, the court explained we may conclude a "group" could not sufficiently monitor counsel if the group "with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel."[26]

Messrs. Wong and Hoeltzel submit two nearly-identical declarations in support of their motion. IBEW identifies paragraph 4 in their declarations as the key averment:

> **Prior to filing our motion for appointment as lead plaintiff, I spoke with [Mr. Wong/Mr. Hoeltzel] by telephone**. We discussed, among other things: the facts and the merits of the claims against defendants; our interest in serving jointly as lead plaintiff; the benefits our small and cohesive group of sophisticated investors may provide to the class, including make better decisions through the input of our diverse group members; and ensuring that the class's claims will be efficiently and zealously prosecuted, through our oversight of Levi Korsinsky.[27]

IBEW argues Messrs. Wong and Hoeltzel fail to show their proposed counsel did not create the group because they failed to aver they first spoke at **their own** initiative—not at the behest of

6

counsel—before moving for appointment. IBEW argued we should require the lead plaintiffs' declaration to include a description of how they met or their pre-suit relationship. Because they fail to make this showing, IBEW argues Messrs. Wong and Hoeltzel fail to satisfy the additional adequacy factor.

While we agree with IBEW as to possible best practices under the Reform Act would include some declaration of the pre-suit relationship, we disagree with IBEW's expansive reading of *Cendant* as requiring this declaration. First, when determining whether a movant satisfies typicality and adequacy, our court of appeals explained our inquiry "should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy."[28] The court further explained this inquiry "as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive."[29] The Reform Act does not mandate the two members of the offered group need be related to each other. We agree we should inquire as to whether the two members enjoyed a relationship outside of this motion in testing whether the two shareholders can together fairly and adequately protect the class interest. But, as our Court of Appeals directed in *Cendant,* the test is whether we find, at this prima facie level, whether Messrs. Wong and Hoeltzel can "fairly and adequately protect the interests of the class . . . [and] not one of relatedness . . . ."[30]

Second, our court of appeals does not require a movant to declare how the two-person group met or their pre-suit relationship. The court explained if we find the group "had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," we "could well conclude" the group will be unable to sufficiently monitor counsel.[31] But nowhere in *Cendant* does the court require members of a movant group to declare they spoke initially about moving for lead plaintiff position solely at their own initiative to satisfy the additional adequacy factor. While

7

it may constitute best practice to declare the movant group members found each other through their own initiative rather than counsel's, Messrs. Wong and Hoeltzel are not required to aver they formed the group through their own initiative to meet their prima facie showing of adequacy. To accept IBEW's standard, we would effectively limit individual shareholder's roles in securities class actions to families and friends or investment groups. We appreciate the benefits of institutional investors serving as lead plaintiffs given its presumed sophistication and financial acuity, but the Reform Act and our precedent does not limit lead plaintiff role to funds or individuals if they somehow could find other shareholders in a public company, ask them to join together and then agree to proceed.[32] And we agree with courts skeptical of and denying lead plaintiff status to individuals joining together in a group after filing separate motions for lead plaintiff.[33]

Third, IBEW dismisses another consideration in applying the additional adequacy factor. The court in *Cendant* explained we also ask "whether a movant group is too large to represent the class in an adequate manner."[34] The court agreed with the Securities Exchange Commission guidance of groups "with more than five members are too large to work effectively."[35] Here, Messrs. Wong and Hoeltzel have the smallest possible group with two members.

### d. We decline to follow distinguishable cases from other district courts.

At oral argument, IBEW discussed cases from our circuit in support of its argument regarding *Cendant's* additional adequacy factor. In *Able Laboratories*, the court appointed a group of institutional investors as lead plaintiffs in a securities class action case.[36] Discussing the additional adequacy factor for groups, the court found the institutional investors declared they, and not their counsel, sought each other to form the group.[37] But the court also looked at the size of the group in determining adequacy and determine the two-member group fell within our court of

8

appeals' recommendation groups not exceed five members.[38] The court expressed its concern of attorneys creating the group because the group members decided to form a movant group after they initially moved for appointment as lead counsel and after they realized another individual investor had the largest financial interest. In *Able,* unlike today, the lawyers cobbled together the group after separate motions for lead plaintiff. Messrs. Wong and Hoeltzel formed their group prior to moving for appointment and not in response to opposing movant with the largest financial interest.

In *DFC Global*, the court appointed a group of institutional investors after noting the concern with "lawyer-driven litigation" in securities class actions, the court found the movant group members' declarations persuasive they could adequately represent the class.[39] The group members declared they asked their attorneys to "seek out like-minded investors and determined, after conferring with each other, to seek joint appointment as Lead Plaintiff."[40] But the court affirmed what we explain above: our court of appeals does not require a movant group show it formed independent of counsel to satisfy the adequacy showing at this stage. Discussing the additional adequacy factor, the court explained "while courts may inquire about the connection amongst members of a movant group, the **focus** of the district court should be on whether the group can fairly and adequately protect the interests of the class, and **not** on relatedness."[41] The court also considered the size of the group in determining adequacy and found the four-member group could sufficiently monitor counsel.

In *Takata*, the court declined lead plaintiff status to a group of three shareholders who had not spoken before the motion for appointment but were only "aware of each other" and to another group of three shareholders who similarly failed to swear as to any contact before their lawyer filed the motion.[42] We are not facing this post-motion attempt at cohesiveness.

9

In *Pelletier*, the court exercising its independent judgment found the moving attorneys recruited two shareholders as clients rather than the clients selecting the attorneys.[43] The court further cited a slight variance ($6,000) difference between the respective losses between the group of shareholders and an institutional fund. In adding these factors to *Cendant's* calculus, the court found the scale tipped in favor of the institutional fund given its sophisticated investment history and ongoing relationship with its proffered lead counsel. Again, we are not facing a slight variance in losses and the two-person group satisfies our independent judgment based on the over fifty-eight years of collective investment experience and the two-persons' decision to proceed together.[44] We also have no basis to find their chosen counsel sought them out and cobbled them together.[45]

Messrs. Wong and Hoeltzel make a prima facie showing they will fairly and adequately protect the interests of the class. Messrs. Wong and Hoeltzel each suffered significant losses and have demonstrated a willingness and motivation to represent the class and consult with counsel regarding litigation. The men are sophisticated investors, with a combined fifty-eight years of experience investing.[46] They spoke on the phone <u>before</u> moving for lead plaintiff and discussed the lawsuit, their interest in serving jointly as lead plaintiffs, and their willingness to monitor proposed counsel.[47] They selected proposed lead counsel because of counsel's extensive experience litigating securities class actions.[48] They discussed a plan to regularly consult with counsel and each other regarding the prosecution of the lawsuit.[49] Because their group contains only two members, we find the group can operate effectively as a unit. While they do not specifically aver they spoke prior to moving solely on their own initiative, our court of appeals does not require they do so. We may determine at class certification Messrs. Wong and Hoeltzel fail to prove adequacy under Rule 23. But now we apply only the prima facie standard from

10

*Cendant*. We find Messrs. Wong and Hoeltzel show they will sufficiently monitor counsel to fairly and adequately protect the interests of the class.

### e. Messrs. Wong and Hoeltzel did not aggregate their losses solely to achieve lead plaintiff status.

Since either Mr. Wong or Mr. Hoeltzel's losses significantly outstrip IBEW's loss, we are not concerned the two men came together solely due to proposed counsel.[50] Two cases in our circuit provide guidance.

In *Aguilar v. Vitamin Shoppe, Inc.*, the court appointed a group of individual investors as lead plaintiff in a class action alleging violations of Sections 10(b) and 20(a) of the Exchange Act.[51] A retirement fund challenging the group's motion for appointment argued the group's counsel aggregated claims hoping to secure lead plaintiff.[52] The court found Mr. Schubert, one of the members of the investor group, had the largest financial interest even without aggregation of the group's claims.[53] The court found his interest "eases concerns about plaintiffs coming together solely to aggregate losses; the fact that Schubert would have been the shareholder with the largest financial loss regardless of [the other group members'] participation suggest that other considerations (beyond merely demonstrating the largest loss) motivate the [group members]."[54]

In *Soto v. Hensler*, the court appointed as lead plaintiff a group consisting of an individual investor and an investment management company.[55] The movants challenging the group argued the group members had "no pre-existing relationship" and the group's counsel created the group to "gain control of the litigation."[56] The court explained since one member's financial loss "would outstrip" the challenging movant's loss, there was no basis for a concern "about the two plaintiffs having come together solely due to manipulation by their counsel."[57]

As in *Soto* and *Aguilar*, each member of the group has a significantly greater loss than IBEW. Both Mr. Wong and Mr. Hoeltzel individually claim losses more than three times greater

11

than IBEW's claimed loss. IBEW does not dispute the claimed loss amounts. Messrs. Wong and Hoeltzel's counsel did not aggregate their claims to secure lead plaintiff position. As we find Messrs. Wong and Hoeltzel have the largest financial interest and make a prima facie showing of adequacy and typicality, we deem them presumptive lead plaintiffs.

### B. IBEW does not rebut the presumption of lead plaintiff.

Once we identify the presumptive lead plaintiff, we determine whether another movant rebuts the presumption.[58] A movant can overcome the presumption by proving the presumptively lead plaintiff will "not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."[59]

At oral argument, IBEW argued Messrs. Wong and Hoeltzel fail to trigger the presumption of lead plaintiff. IBEW made no rebuttal argument. Since we find Messrs. Wong and Hoeltzel are presumptive lead plaintiffs and no class members rebut the presumption, we appoint Messrs. Wong and Hoeltzel lead plaintiffs.

### C. We approve Messrs. Wong and Hoeltzel's choice of lead counsel.

Messrs. Wong and Hoeltzel also move for appointment of Levi & Korsinsky LLP as Lead Counsel, and O'Kelly Ernst & Joyce, LLC, as Liaison Counsel. Under the Reform Act, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."[60] Our court of appeals instructs we use a deferential standard.[61] We do not disturb the lead plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class."[62]

Messrs. Wong and Hoeltzel have shown Levi & Korsinsky and Ernst are experienced securities class action counsel. They produced extensive documentation demonstrating counsel's experience.[63] IBEW has not challenged Messrs. Wong and Hoeltzel's choice of lead counsel and

12

liaison counsel. We grant Messrs. Wong and Hoeltzel's motion for appointment of lead counsel and liaison counsel.

## II. Conclusion

In an accompanying order, we grant the motion of Messrs. Soe Wong and Michael Hoeltzel for appointment as lead plaintiff group, Levi & Korsinsky LLP as Lead Counsel, and O'Kelly Ernst & Joyce, LLC, as Liaison Counsel. We deny the motion of IBEW Local 89 Pension Fund for appointment as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

---

[1] ECF Doc. No. 1 ¶ 19 (Class Action Complaint).

[2] *Id.* at ¶ 20.

[3] *Id.*

[4] *Id.* at ¶ 26.

[5] *Id.* at ¶ 27.

[6] *Id.* at ¶ 33.

[7] *Id.* at ¶ 5.

[8] *Id.* at ¶ 6.

[9] *Id.* at ¶ 4

[10] ECF Doc. No. 6.

[11] ECF Doc. No. 7.

[12] *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 848 (E.D. Pa. 2018).

[13] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[14] *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

[15] *Id.*

[16] *Id.* at 263.

[17] *Pelletier*, 316 F. Supp. 3d at 853 (quoting *Cendant*, 264 F.3d at 265).

[18] *Cendant*, 264 F.3d at 265.

[19] *Id.* at 266.

[20] *Id.* at 267.

[21] *Id.* at 263, 264.

[22] *Id.* at 266.

[23] ECF Doc. No. 6-8 (Ex. D); ECF Doc. No. 6-9 (Ex. E).

[24] ECF Doc. No. 6-3 ¶ 4 (Hoeltzel Declaration).

[25] *Cendant*, 264 F.3d at 266.

[26] *Id.* at 267.

[27] ECF Doc. No. 6-2 ¶ 4 (Wong Declaration); ECF Doc. No. 6-3 ¶ 4 (Hoeltzel Declaration) (emphasis added).

[28] *Id.* at 263.

[29] *Id.* at 264.

[30] *Id.* at 267.

[31] *Id.*

[32] For example, we are not aware of an ability under the Reform Act, possibly like the ability under Delaware corporate law, to summarily seek the issuer's books and records to find shareholders. *See* 8 Del.C. § 220.

[33] *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 564 (D.N.J. 2006).

[34] *Cendant*, 264 F.3d at 267.

[35] *Id.*

[36] *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 564.

[37] *Id.* at 569.

[38] *Id.* at 569-70.

[39] *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014).

[40] *Id.* at *7.

[41] *Id.* at *6.

[42] *Takata v. Riot Blockchain, Inc.*, Nos. 18-2293, 2018 WL 5801379, *5 (D.N.J. Nov. 6, 2018).

[43] *Pelletier v. Endo International PLC*, 316 F.Supp.3d 846, 854 (E.D. Pa. 2018).

[44] ECF Doc. No. 6-2 ¶ 2; ECF Doc. No. 6-3 ¶ 2. At oral argument, Messrs. Wong and Hoeltzel's reaffirmed the two men's decision to move as a group rather than disband. Thus, we do not a situation like the one in *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803 (N.D. Ohio 1999), where a movant attempted to amend a motion for appointment after the sixty-day window for filing a motion.

[45] For example, we may be facing a different result if we reviewed evidence of these two individuals having been represented by their chosen counsel in other securities cases – a "stable" of individuals represented by counsel regardless of the claim. Or, if we reviewed evidence of a website soliciting investors and then discouraging certain prospective clients and selecting just these two. The proffered lead counsel represented we were not facing these issues during oral argument.

[46] ECF Doc. No. 6-2 ¶ 2; ECF Doc. No. 6-3 ¶ 2.

[47] ECF Doc. No. 6-2 ¶ 4.

[48] *Id.* at ¶ 7.

[49] *Id.* at ¶ 6.

[50] *Soto v. Hensler*, 235 F. Supp. 3d 607, 622 (D. Del. 2017) ("Since Dyson would have been the shareholder with the largest financial loss regardless of Cook's participation in the group, this suggests that other considerations (beyond merely demonstrating the largest loss) drove Cook and Dyson to band together.").

[51] No. 17-6454, 2018 WL 1960444 (D.N.J. Apr. 25, 2018).

[52] *Aguilar*, 2018 WL 1960444, at *9-10.

[53] *Id.* at *6.

[54] *Id.* at *11.

[55] 235 F. Supp. 3d 607, 612 (D. Del. 2017).

[56] *Soto*, 235 F. Supp. 3d at 620.

[57] *Id.* at 621.

[58] *Cendant*, 264 F.3d at 262.

[59] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

[60] *Id.* at § 78u-4(a)(3)(B)(v).

[61] *Cendant*, 264 F.3d at 274.

[62] *Id.*

[63] ECF Doc. No. 6-8 (Levi & Korsinsky firm biography); ECF Doc. No. 6-9 (O'Kelly Ernst & Joyce firm biography).