UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STROUGO, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>    v.<br><br>LANNETT COMPANY, INC., TIMOTHY C. CREW, and MARTIN P. GALVAN,<br><br>               Defendants. | Case No. 2:18-cv-03635-MAK<br><br>Judge Mark A. Kearney |

**LEAD PLAINTIFFS' BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................1

II.  SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS ................1

    A.  Plaintiffs' Claims and Allegations ........................................................1

    B.  Procedural History and Class Counsel's Investigation .........................2

III.  THE PROPOSED TERMS OF SETTLEMENT.............................................3

    A.  The Class Definition ............................................................................3

    B.  Monetary Consideration and Plan of Allocation ...................................3

    C.  Release Provisions ..............................................................................4

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ..........5

    A.  The Settlement Approval Process .........................................................5

    B.  The Proposed Settlement Meets the Requirements for Preliminary Approval
        under Rule 23(e)(2)...............................................................................5

        1.  Plaintiffs and Levi & Korsinsky Adequately Represented
            the Class. ...................................................................... 5

        2.  The Proposal Was Negotiated at Arm's Length ............... 6

        3.  The Relief Provided for the Class Is Adequate................. 7

        4.  The Settlement Treats Class Members Equitably........... 12

V.  PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS
    APPROPRIATE ........................................................................................13

    A.  The Class Members Are So Numerous that Joinder Is Impracticable ...............13

    B.  Common Questions of Law or Fact Exist.............................................14

    C.  Plaintiffs' Claims are Typical of Those of the Class ...........................14

    D.  Plaintiffs Are Adequate Representatives of the Class .........................15

    E.  The Requirements of Rule 23(b)(3) Are Also Satisfied .......................15

        1.  Common Legal and Factual Question Predominate ....... 15

        2.  A Class Action is the Superior Means to Adjudicate
            Plaintiffs' and Class Members' Claims ......................... 16

VI.  THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE

CONSTITUTIONALLY SOUND AND APPROPRIATE.........................................16

VII.   PROPOSED SCHEDULE......................................................................................17

VIII.  CONCLUSION ...............................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
    No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)................................ 7, 9

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................... 8

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................... 15

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 13, 15

*Blum v. Stenson*,
    465 U.S. 886 (1984)....................................................................................... 11

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ............................................................................. 5

*Chavarria v. N.Y. Airport Serv., LLC*,
    875 F. Supp. 2d 164 (E.D.N.Y. 2012) ............................................................... 13

*In re Community Bank of Northern Virginia*,
    418 F.3d 277 (3d Cir. 2005) ............................................................................ 15

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ............................................................................. 13

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ................................... 12

*In re DVI Inc. Sec. Litig.*,
    249 F.R.D. 196 (E.D. Pa. 2008)....................................................................... 14

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................................ 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................. 13

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)....................................................................................... 14

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018) ................ 11

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013)......................................................................... 11

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) ........................................ 11

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................................. 8

*Milliron v. T-Mobile USA, Inc.*,
    No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .................................................... 11

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) .............................................................................................................. 11

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ................................................................................................. 13

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................................................... 5

*In re Ocean Power Techs., Inc.*,
    No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016) ...................... 12

*In re Par Pharm. Sec. Litig.*,
    No. 06 Civ 3226, 2013 WL 3930091 (D.N.J. July 29, 2013) ................................................. 7

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) .......................................................................................... 7, 9

*In re Rent-Way Secs. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................................................... 9

*Riedel v. Acqua Ancien Bath New York LLC*,
    2016 WL 3144375 (S.D.N.Y May 19, 2016) ......................................................................... 7

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
    No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) .............................. 11

*In re Schering-Plough Corp. Sec. Litig.*,
    No. 01 Civ. 0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009) ........................................ 9, 17

*Sullivan v. DB  Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................................................. 12

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................ 12

*In re ViroPharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) .................................. 16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................................... 7, 9

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................................. 12

**Statutes**

Fed. R. Civ. P. 23(a)(2) ............................................................................................................... 14

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................. 16

Fed. R. Civ. P. 23(e) ............................................................................... 5, 13

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions §4:50 (5th ed. 2012) ............................................. 14

*Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995) ............................................. 16

Manual for Complex Litigation, Third, § 30.42 (West 1995) ........................................ 6

**Rules**

Fed. R. Civ. P. 23 ................................................................................ 7, 13

## I.    INTRODUCTION

Lead Plaintiffs Michael Hoeltzel and Soe Wong ("Plaintiffs") respectfully submit this memorandum in support of their unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this class action securities fraud lawsuit. The Settlement, embodied in the Stipulation of Settlement ("Stipulation") filed contemporaneously herewith as Docket No. 68, represents the best outcome possible for the Class given the unique factual circumstances at hand.[1] Simply put, discovery revealed that Defendants' statements were not false or materially misleading. This Settlement restores a small amount of money to the Class that it otherwise would not have received if this case was not litigated.

The Stipulation provides the Settlement Class Members with an ultimate benefit of $300,000 with the addition of administration costs to be paid by Defendants in exchange for a full release of all claims relating to this Action. Considering that Lead Counsel's evaluation of the documentary evidence received to date creates substantial doubt as to whether Plaintiffs would have been able to establish liability against Defendants, Plaintiffs and Lead Counsel believe that the Settlement is a positive outcome for the Class and should be approved.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    Plaintiffs' Claims and Allegations

This Action arises from Lannett's renewal of its distribution agreement with Jerome Stevens Pharmaceuticals ("JSP") for exclusive distribution rights over JSP's product, Levothyroxine (the "JSP Agreement"). The JSP Agreement was the most important component of Lannett's business and between 2016 and 2018 as it accounted for no less than 36% of Lannett's inventory purchases and 30% of Lannett's total net sales.

The Amended Complaint's allegations concerned Defendants statements regarding the prospects for renewing the JSP Agreement for an additional five years, including Defendants' representations that JSP was a significant stockholder in Lannett during the Settlement Class

---

[1]    Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

Period of February 8, 2018 through August 17, 2018, inclusive. More specifically, the Amended Complaint alleged that Defendants knew that the renewal of the agreement was doomed given that the architect of the JSP Agreement, former CEO of Lannett Arthur Bedrosian who had strong ties with the owners of JSP, was removed from the chief executive officer position while negotiations were commencing. Additionally, the Amended Complaint alleged that Defendants knew and misleadingly stated that JSP was significant stockholder as a way of bolstering the positive prospects and status of the negotiations for the renewal of the JSP Agreement. Finally, the Amended Complaint alleged that on August 20, 2018, Lannett told the market that "its distribution agreement with [JSP], which expires on March 23, 2019, will not be renewed" and in response Lannett's stock price fell 60.3% causing class members that invested in Lannett based on Defendants' false statements about the prospects of the JSP Agreement's renewal and JSP's status as "significant" shareholder of Lannett to incur significant damages.

### B.    Procedural History and Class Counsel's Investigation

The initial complaint in this Litigation was filed on August 24, 2018. ECF No. 1. In response, Lead Counsel commenced a comprehensive investigation into Lannett's operations, its agreements with JSP, and JSP's status as a Lannett shareholder. Declaration of Adam M. Apton dated July 12, 2019 ("Apton Decl."), ¶3. The investigation included reviewing Lannett's filings with the SEC and public statements in press releases and conference calls. *Id.* The investigation also included reviewing material about the company, such as analyst reports and information readily available on the internet. *Id.*

On October 26, 2019, Plaintiffs filed their motion for appointment as Lead Plaintiffs. ECF No. 6. After full briefing on their contested motion for appointment and oral argument, the Court entered an order on November 30, 2018 appointing Plaintiffs to oversee the Litigation and approving their selection of Lead Counsel. ECF No. 39.

On December 26, 2018, Plaintiffs filed the Amended Complaint against Defendants. ECF No. 41. Thereafter, Defendants moved to dismiss the Amended Complaint. ECF No. 48. After full briefing on the motion dismiss, the Court issued an Order granting in part and denying in part

Defendants' motion to dismiss on March 13, 2019. ECF No. 56. The Court dismissed all claims except for the "claims against all Defendants challenging February 8, 2018 and May 9, 2018 statements describing Jerome Stevens' then 'significant' or 'large' shareholder interests in Lannett Company" (the "Surviving Claims"). *Id.*

On March 21, 2019, the parties met and conferred in accordance with Rule 26(f) (the "Conference"). *See* ECF No. 62. During the Conference, the parties discussed the claims and defenses, and what they believed were the relevant issues and the scope of discovery. *Id.* On March 28, Plaintiffs served initial requests for production and interrogatories on March 28, 2019. *See* ECF No. 62. Defendants served initial requests for production on March 28, 2019. *Id.* Moreover, Plaintiffs served document subpoenas on, and received documents from, certain third parties, including JSP and its directors and/or shareholders. In total, Lead Counsel received and reviewed over 1,000 pages of documents. Apton Decl. at ¶11.

The discovery received was not favorable to Plaintiffs' case. In fact, it tended to support the conclusion that Defendants' statements about JSP's status as a shareholder were in fact not false and/or materially misleading. Accordingly, in an effort to restore some amount of money to the Class, Lead Counsel contacted Defendants' counsel to discuss resolving the Litigation on May 29, 2019. *Id.* at ¶12. The parties proceeded to negotiate a Settlement thereafter. The Stipulation embodies the terms of the Settlement.

## III.   THE PROPOSED TERMS OF SETTLEMENT

### A.   <u>The Class Definition</u>

The Settlement Class is defined means all Persons who purchased or otherwise acquired Lannett common stock from February 8, 2018 through and including August 17, 2018, and held such stock until at least August 17, 2018 and sustained damages. The Class excludes Defendants and certain related individuals and entities, as well as any Settlement Class Member that validly and timely requests exclusion pursuant to the terms provided by the Court.

### B.   <u>Monetary Consideration and Plan of Allocation</u>

Plaintiffs are securing a total benefit for the Class of $300,000 plus up to an estimated

$100,000 in administration costs to be paid by Defendants. These amounts will be paid in cash by or on behalf of Defendants.

The Plan of Allocation is based on the Amended Complaint. It provides compensation to those Settlement Class Members that sustained losses in response to the decline in the price of Lannett's common stock that occurred on August 20, 2018. All Settlement Class Members will receive the same distribution depending on the number of shares of Lannett's common stock held as of close of trading on August 17, 2018. The Plan of Allocation will be applied uniformly to all Settlement Class Members that submit valid and timely claims. The Plan of Allocation is described in full in the Notice. *See* Stipulation at Exhibit A-1.

**C.      Release Provisions**

In exchange for the monetary consideration described above, Plaintiffs are releasing Lannett (and other Released Persons) from all claims arising from Lannett's common stock. Specifically, the Stipulation defines the term "Released Claims" as follows:

> means any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments, and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule, or regulation, at law or in equity, whether class or individual in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that were asserted or could have been asserted in the Litigation arising out of or relating to (i) the purchase, acquisition, or sale of shares of Lannett common stock during the Settlement Class Period, (ii) the acts, facts, matters, allegations, transactions, events, disclosures, occurrences, representations, statements, acts, or omissions or failures to act that were alleged or could have been alleged in the Litigation, and (iii) any claims arising out of or relating to the defense, settlement, or resolution of this Litigation. "Released Claims" does not include claims to enforce the Settlement. "Released Claims" includes "Unknown Claims" as defined in ¶ 1.30 [of the Stipulation].

## IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.     <u>The Settlement Approval Process</u>

Rule 23(e) provides a two-step process for approving class action settlements.[2] First, if a proposed settlement would bind class members, then the court should evaluate the proposed settlement to determine whether giving notice to class members would be justified. FED. R. CIV. P. 23(e)(1). Second, once notice is given, the court should only approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2).

Under Rule 23(e)(1), notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement. In the context of determining whether approval is likely to occur, Rule 23(e)(2) instructs the court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."  "An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

### B.     <u>The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2).</u>

#### 1.     **Plaintiffs and Levi & Korsinsky Adequately Represented the Class.**

This was a difficult case to litigate from start to finish. Factually, Plaintiffs were faced with the immediate issue of obtaining evidence to substantiate their theory of liability without the

---

[2] Plaintiffs' argument in this section takes into account the amendments to Rule 23, effective December 1, 2018, as well as the *Guidance on new Rule 23 class action settlement provisions,* 102 JUDICATURE, no. 3, Winter 2018, at 15-21.

benefit of discovery and the reality that any favorable documents were non-public and under the control of Defendants. To overcome this obstacle, Plaintiffs engaged in a comprehensive investigation to support their claims against Defendants. Apton Decl. at ¶¶3, 6. These efforts ultimately resulted in the filing of the Amended Complaint that only partially survived Defendants' motion to dismiss. *Id.* at ¶8. Specifically, the Court permitted discovery on only two alleged misstatements concerning whether or not JSP was "significant" or one of the "largest" shareholders in Lannett. *See* ECF No. 57.

Plaintiffs attempted to salvage the case during document discovery. Plaintiffs received and reviewed approximately 1,000 pages of documents in response to party and non-party productions. *Id.* at ¶11. Unfortunately for Plaintiffs, the content of these documents tended to undermine any viable theory of liability and created a substantial risk that they would not be able prove the Surviving Claims at the summary judgment stage and/or trial. *Id.*

Despite all of these issues, Plaintiffs were able to negotiate a successful settlement. Given that continuing the Litigation would have likely resulted in the dismissal of the Surviving Claims, Lead Counsel believes that the Settlement is a favorable outcome in a rather unfavorable scenario. *Id.* at ¶18. This factor weighs in favor of granting preliminary approval and directing notice under Rule 23(e).

### 2. The Proposal Was Negotiated at Arm's Length

The parties reached the proposed Settlement after negotiations. These negotiations only took place and were finalized after Lead Counsel conducted a substantial review of the file, including all discovery received and considering how it impacted Plaintiffs' theory of liability. *See also* Manual for Complex Litigation, Third, § 30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

As a means to ensure the fairness and adequacy of the Settlement, Lead Counsel only decided to contact Defendants' counsel concerning a potential resolution of the Surviving Claims after review of the documents produced in discovery and identifying the additional significant

hurdles of proving liability on the Surviving Claims moving forward. *Id.* at ¶12. Based upon the documents provided to Plaintiffs by Defendants and JSP and its related parties, Plaintiffs and Lead Counsel believes that the Settlement is fair and reasonable to the Class and should be approved by the Court. *Id*. at ¶18. This fact further supports the motion for preliminary approval and directing notice to the Class. *See*, *e.g.*, *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."); *see also Riedel v. Acqua Ancien Bath New York LLC*, 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y May 19, 2016) (document exchange reflects ability of counsel to evaluate strengths and weaknesses of claims).

### 3. The Relief Provided for the Class Is Adequate.

Rule 23(e) identifies four factors for the court to consider when determining whether the relief provided under a proposed settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The proposed Settlement meets these criteria and is therefore adequate:

#### (a) The costs, risks, and delay of trial and appeal.

A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions and ultimately a complicated, lengthy trial*." In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re Par Pharm. Sec. Litig.*, No. 06 Civ 3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). While Plaintiffs believed that their claims were initially

strong, discovery revealed significant flaws in the theory of their case. Litigation of the claims alleged in this case raised a number of complex questions that required substantial efforts by Plaintiffs and Lead Counsel. As discussed below, Plaintiffs would have had to overcome numerous hurdles to achieve a litigated verdict against Lannett. Even assuming that the sustained claims survived a motion for summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was virtually certain that an appeal would have been taken. All of the foregoing would have posed considerable expense to the parties, and would have delayed any potential recovery for several years, if one was even achieved.

Here, Plaintiffs were faced with significant, if not impossible hurdles, including:  (1) proving any of the Surviving Claims were materially false or misleading statement because, as a factual matter, JSP or its designees were "significant" or "large" shareholders; (2) overcoming Defendants' claims that Plaintiffs' surviving misstatements were known to the market before the start of the putative Class Period; (3) establishing that any Defendant acted with scienter because, among other reasons, JSP's management represented to Defendants that they were still substantial shareholders throughout the putative class period; and (4) showing that the Surviving Claims impacted the price of Lannett securities when made.

The risk of obtaining and maintaining class certification through trial also supports approval of the Settlement. Plaintiffs had not yet moved for class certification at the time of the Settlement and, absent the Settlement there would have been a contested motion for class certification. While Lead Counsel believe that the requirements for Rule 23 were satisfied in this case and would vigorously argue for class certification, class-certification discovery would have

been conducted and Defendants, without doubt, would have opposed the motion. The process would have added time and expense to the proceedings, and the outcome of such a contested motion was far from certain. Moreover, even if the class was certified for other than settlement purposes, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *Prudential*, 148 F.3d at 321; *see also In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approve of the proposed Settlement.").

Lead Counsel believes that this is a favorable outcome for the class as it secures an immediate benefit (albeit small) in light of the expected difficulties in proving liability based on the discovery reviewed to date. The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; see *also In re Schering-Plough Corp. Sec. Litig.*, No. 01 Civ. 0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"). Here, while Defendants arguably could afford to pay more, Plaintiffs respectfully submit that this should not be viewed with much significance in light of the other factors supporting approval of the Settlement. Thus, whereas here, there is a real and substantial risk that Plaintiffs would not prevail on the merits, a recovery supports that it is fair and reasonable to the class. *See Alves,* 2012 WL 6043272, at *21 (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk that the Plaintiffs would lose the merits of the case").

(b) The effectiveness of any proposed method of distributing relief to the
class, including the method of processing class-member claims.

Defendants retained JND Legal Administration to serve as the Claims Administrator. The principals of JND collectively have over 75 years of experience in class action legal and

administrative fields. *See* Declaration of Luiggy Segura, dated July 12, 2019, ¶3. In total, they have been involved in settlements responsible for disbursing billions of dollars to shareholder claimants. *Id.*

JND distributes funds in accordance with the following process. Notice is provided to potential class member by mailing notice to a company's shareholders of record, including recipients consisting of brokers and various investment advisors as a standard operating procedure. *Id.* at ¶4. These recipients manage accounts on behalf of thousands of retail investors who then forward the notice to potential class members. *Id.* JND also provides notice via an electronic press release through a service. *Id.* at ¶5.

Class members then respond to the notice by submitting completed claim forms. The Claims Administrator receives these claims forms either by mail or electronically and, once the claims deadline passes, begins to vet each claim. The Claims Administrator reviews the claims to make sure they are authorized (*i.e.*, validly submitted in accordance with the class definition), completed correctly, properly signed, and include all necessary supporting documentation. Claimants who submit deficient claims are then notified and given an opportunity to cure the deficiency. *Id.* at ¶¶6-8. Once the claims have been vetted, the Claims Administrator will calculate the *pro rata* distribution from the settlement fund and distribute the funds via check after court approval. Payees are usually given 90 or 180 days to negotiate the checks. Payees who do not negotiate their checks in that period of time are given an additional opportunity to receive their distribution, either in the form of a new check or by wire if feasible. *Id.* at ¶¶9-10.

JND as well as almost all securities claims administrators routinely follows aforementioned process. JND believes that the settlement fund in this case will be administered without issue. *See id.* at ¶11.

(c)  The proposed award of attorney's fees, including timing of payment.

Lead Counsel intends to seek an award of attorneys' fees of $75,000 (which is less than 20% of the monetary benefits obtained under the Settlement including the payment of Notice and Administration Expenses). The Supreme Court has recognized that an appropriate court-awarded

fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). At less than 20%, the requested fee is equal to the percentage fee awards granted in many other comparable securities class actions within the Third Circuit.[3] Moreover, Lead Counsel will not be paid any fees until after the Court has entered the Judgment.

Lead Counsel respectfully submits that at this stage of the approval proceedings, the fact that the intended fee request will be in line with Third Circuit precedent supports Plaintiff's request for preliminary approval. When Lead Counsel formally moves for an award of attorneys' fees, it will submit additional evidence in support of its request.

(d) Any agreement required to be identified under Rule 23(e)(3).

Aside from the Stipulation, the parties have entered into the Supplemental Agreement. The Supplemental Agreement, as described in the Stipulation, provides Lannett with the right to terminate the Settlement if a certain number of Class Members (or certain percentage of damaged ADRs) exceeds a threshold. *See* Stipulation at ¶7.3. The Supplemental Agreement is "confidential" as is customarily the case. *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sep. 4, 2018) (allowing confidential filing of supplemental agreement in order to "'avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement.'").

---

[3] *See, e.g., See In re Ins. Brokerage Antitrust Litig.,* 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,* No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of settlement); *Ins. Brokerage Antitrust Litig.,* 297 F.R.D. at 154-56 (awarding 33% of settlement).

4.      **The Settlement Treats Class Members Equitably.**

The Settlement does, in fact, treat Class Members equitably. This is because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted). As described in the Notice (Stipulation, Exhibit A-1), the Plan of Allocation has a rational basis and was formulated by Lead Counsel ensuring its fairness and reliability. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (granting final approval of settlement as "The Plan of Allocation is rational and consistent with Lead Plaintiffs' theory of the case."). Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Amount, with that share to be determined by the ratio that the claimant's allowed claim bears to the total allowed claims of all claimants. *See* Apton Decl. at ¶17. The Plan of Allocation is based upon the premise that Settlement Class Members sustained damages by purchasing Lannett common stock at artificially inflated prices and seeks to compensate them in accordance with the devaluation that Lannett common stock experienced when the corrective disclosure entered into the public sphere. *Id*. The Plan of Allocation relies on the corrective disclosure listed in the Amended Complaint, which is common in securities class actions. *Datatec Sys.,* 2007 WL 4225828, at *5.

The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *73 (D.N.J. Nov. 15, 2016) ("pro rata distributions are consistently upheld, and there is no requirement that a plan of allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB  Invs., Inc.,* 667 F.3d 273, 328 (3d Cir. 2011)); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their

recognized losses based largely on when they bought and sold their shares of [company] stock" as "even handed"). In assessing a proposed plan of allocation, the Court may give great weight to the opinion of informed counsel. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. That is, 'as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.'"). Accordingly, given Lead Counsel's opinion concerning the Plan of Allocation, this factor weighs in favor of granting preliminary approval.

## V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS APPROPRIATE

As instructed by Rule 23(e), notice to class members should be directed if it appears likely that the court will be able to certify the class for the purposes of settlement. FED. R. CIV. P. 23(e). Conditional certification of a class for settlement purposes are allowable under Rule 23. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995). Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23. For the reasons stated below, certification would be appropriate and, therefore, the Court should proceed with authorizing notice.

### A.    The Class Members Are So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires that a class action must be advanced on behalf of a number of individuals so large that the joinder of all members is impractical. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). While the precise number of Class Members is unknown, the number certainly exceeds any number considered

practical for joinder. As alleged, Lannett's common stock was actively traded on the New York Stock Exchange. During the Class Period, there were over 90.3 million shares being traded. Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts. *See In re DVI Inc. Sec. Litig.,* 249 F.R.D. 196, 200 (E.D. Pa. 2008*), aff'd sub nom. In re DVI, Inc. Sec. Litig.,* 639 F.3d 623 (3d Cir. 2011) (finding numerosity where stock traded on NYSE).

### B.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added). Rule 23(a)(2) merely requires that a plaintiff demonstrate common questions of law or fact that are susceptible to class-wide proof. 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196-97 (5th ed. 2012). Identicality of all facts and legal questions is not necessary – commonality will be demonstrated where the named plaintiff demonstrates just one common question. *Id.* (citations omitted).

This case presents numerous common questions of both law and fact for Settlement purposes, which include: (i) whether the federal securities laws were violated by Defendant's acts; (ii) whether Defendants made material misrepresentations and omissions concerning the JSP status as a shareholder of Lannett; (iii) whether Defendant acted with the requisite state of mind in misrepresenting or failing to disclose material facts; (iv) whether the corrective disclosures of the prior misrepresentations and omissions caused artificial inflation of the market price of Lannett common stock, and if so, how much; and whether the Settlement Class Members have sustained damages and, if so, the appropriate measure thereof.

### C.    Plaintiffs' Claims are Typical of Those of the Class

Rule 23(a)(3) requires that the claims of the named plaintiff are typical of the class's claims. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members for Settlement purposes. Defendants' alleged course of conduct uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury when the truth about the

company's misstatements was revealed. Thus, the typicality requirement of Rule 23(a)(3) is met.

**D.      Plaintiffs Are Adequate Representatives of the Class**

The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The adequacy inquiry also tests the qualifications of counsel to represent a class. *See Viropharma*, 2016 WL 312108, at *7.

There are no apparent conflicts of interest between Plaintiffs and the absent Settlement Class Members for Settlement purposes. Indeed, Plaintiffs have been committed to the vigorous prosecution of this action from the outset and has reached a resolution that they believe is in the best interests of the Class. Plaintiffs have shown that they are more than an adequate representative by, among other things producing documents to Defendants, reviewing the Amended Complaint, and retaining and overseeing experienced counsel throughout the Litigation.

**E.      The Requirements of Rule 23(b)(3) Are Also Satisfied**

The class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, Plaintiffs and Defendants have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 302 (3d Cir. 2005). Rule 23(b)(3) requires that Plaintiffs show that common questions of law and fact predominate over individual inquiries, and that resolution of the dispute via a class action is a superior method of adjudication. Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). This case meets these requirements.

**1.      Common Legal and Factual Question Predominate**

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625. In this securities action, Defendant's alleged liability arises from its conduct with respect to statements made about JSP's ownership stake in Lannett. Whether Defendant's publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts predominates over any individual issue that theoretically might arise

for Settlement purposes. *See Viropharma*, 2016 WL 312108, at *7 (finding common questions "dominate the Class, including whether Defendants' statements to the investing public during the Class Period caused the price of ViroPharma's securities during the Class Period to artificially inflate.").

        **2.**     **A Class Action is the Superior Means to Adjudicate Plaintiffs' and Class Members' Claims**

The second prong of Rule 23(b)(3) is essentially satisfied by the proposed Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing FED. R. CIV. P. 23(b)(3)(D)). Thus, any manageability problems that may have existed here—and Plaintiffs know of none—are eliminated by the Settlement. *See In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *23 (E.D. Pa. Jan. 25, 2016) (finding class action superior as all class members were "complaining of the same behavior by Defendants" and "[t]he alternative would produce individual suits throughout the country, redundantly wasting judicial resources to litigate the same claims over and over).

**VI.**    **THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE**

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Here, the parties propose that notice be given by U.S. mail. *See* Stipulation at ¶¶ 3.1, 5.4. In addition, the Stipulation provides for publication of a summary notice, which will be published one time on the *PRNewswire*. *See* Apton Decl. at ¶16.

The proposed form of mailed notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Settlement Class Members in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement

for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement. The proposed form of Summary Notice (Exhibit A-3 to the Stipulation), provides essential information about the litigation and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of the Private Securities Litigation Reform Act of 1995, Rule 23 and due process. *See e.g.*, *Schering-Plough*, 2009 WL 5218066, at *1, 6 (finding that a settlement notice with a mailing to all class members who could be identified with reasonable effort and publication of a summary notice and over the *PR Newswire*, satisfied the requirements of Rule 23 and due process).

## VII.    PROPOSED SCHEDULE

Plaintiffs respectfully request the Court to schedule the dates set forth below and enter them in the [Proposed] Preliminary Approval Order, including:

| | |
|---|---|
| Last day to complete mailing of Notices and Claim Forms. | At least 60 days before deadline for objections |
| Last day for filing and serving papers in support of final approval of the proposed Settlement, and the Fee and Expense Application . | At least 42 days before Fairness Hearing |
| Last day for Settlement Class Members to submit comments in support of, or in opposition to, the proposed Settlement, and the applications for Fee and Expense Awards. | At least 35 days before Fairness Hearing |
| Last day for potential Settlement Class Members to request exclusion from the Class. | At least 35 days before Fairness Hearing |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the Fee and Expense Application. | At least 14 days before Fairness Hearing |
| Fairness Hearing | At least 110 days following Preliminary Approval Date |

## VIII.   CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an

order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated July 12, 2019

Respectfully submitted,

O'KELLY ERNST & JOYCE, LLC

*/s/ Ryan M. Ernst*
Ryan M. Ernst (No. 202191)
901 N. Market Street, Suite 1000
Wilmington, DE 19801
Phone (302) 778-4000
Fax (302) 295-2873
rernst@oeblegal.com

*Liaison Counsel for Lead Plaintiffs*

-and-

LEVI & KORSINSKY, LLP
Nicholas I. Porritt
Adam M. Apton
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com
*Admitted Pro Hac Vice*

*Attorneys for Lead Plaintiffs Soe Wong
and Michael Hoeltzel and Lead Counsel for
the Class*