UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Strougo, on Behalf of Himself and All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>Lannett Company, Inc., et al.<br><br>                              Defendants. | Case No. 2:18-cv-03635-MAK<br><br>**DECLARATION OF ADAM M. APTON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

I, Adam M. Apton, hereby declare as follows:

1.       I am a partner of the law firm of Levi & Korsinsky, LLP, attorneys for Lead Plaintiffs Soe Wong and Michael Hoeltzel ("Plaintiffs") and Lead Counsel in this Action. I am admitted to practice before this Court *pro hac vice* and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action. I submit this Declaration in support Plaintiffs' Motion for Preliminary Approval of the Settlement.[1]

## BACKGROUND

2.       Plaintiff Robert Strougo initially commenced this Action on August 24, 2018 several days after Defendants announced that Lannett Company Inc. ("Lannett") would not be renewing its distribution agreement with Jerome Stevens Pharmaceuticals ("JSP"). Given the importance of the distribution agreement to Lannett's operations, the market reacted immediately to the negative news causing the price of Lannett's common stock to fall by $8.15 per share.

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement, dated July 12, 2019 (the "Stipulation") (Dkt. No. 68).

Lannett's stockholders suffered significant losses as a result. Mr. Strougo's lawsuit sought to recover those losses under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.

3.      Levi & Korsinsky is an experienced securities litigation firm. Upon receiving notice of Mr. Strougo's lawsuit, the firm's attorneys immediately began to investigate the allegations in the complaint. This investigation included, among other things, the following:

- Performing an in-depth review and analysis of Lannett's public statements before, during and after the relevant time period, including SEC filings, research reports by securities and financial analysts, press releases, conference call transcripts, news and media reports concerning Lannett and JSP, and data reflecting the pricing of Lannett's securities;

- Conducting a thorough investigation into the law and facts of the case, including reviewing news articles about Levothyroxine (the drug central to the distribution agreement between Lannett and JSP), Arthur Bedrosian (Lannett's former CEO), and the history between Lannett and JSP dating back to the origination of the distribution agreement between the two companies; and

- Conferring with experts and/or consultants concerning specialized issues in the case, including loss causation and damages.

4.      Based upon our investigation, my firm decided to further pursue the case against Defendants. It appeared increasingly likely that Lannett's chances of renewing its distribution agreement with JSP had decreased significantly following Mr. Bedrosian's removal as CEO and, among other things, the fact that Lannett appeared to have already been discussing partnerships with other drug distributors. Thus, in accordance with our review of the case facts and applicable law, we believed that Defendants and committed violations of the Securities Exchange Act of 1934 when making public statements about its relationship with JSP between February 8, 2018 and August 17, 2018, inclusive (the "Class Period").

5.      On October 26, 2019, our firm filed a motion with the Court requesting that it appoint our clients, Michael Hoeltzel and Soe Wong, as the Lead Plaintiffs in the Action and Levi & Korsinsky as Lead Counsel. Another highly experienced securities litigation firm opposed the motion by seeking to have its client be appointed as the Lead Plaintiff instead. The Court heard oral argument on the competing motions on November 27, 2018 and three days later, on November 30, 2018, granted our motion.

6.      A briefing schedule allowing Plaintiffs to file an amended pleading was already in place at this point. It had been entered on November 9, 2018 and, pursuant to the Court's Order, it required Plaintiffs to file their amended complaint no later than December 19, 2018. We immediately began incorporating the results of our research and investigation into an amended pleading. We also continued to investigate the matter by, among other things, interviewing former employees of Lannett.

7.      Plaintiffs filed their amended complaint on December 19, 2018, as required. Defendants moved to dismiss the complaint instead of answering. Their motion argued that, pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995, Plaintiffs failed to satisfy the requisite pleading standards for a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5.

8.      Following extensive briefing, the Court granted in part and denied in part Defendants' motion. The Court's Order largely dismissed Plaintiffs' case except for a small component involving two particular public statements concerning JSP's status as a Lannett stockholder. This dramatically narrowed the issues in the case and, in turn, the scope of discovery going forward. In sum, Plaintiffs would only be able to establish liability against Defendants if JSP was not a significant or large shareholder of Lannett during the Class Period.

9.      Defendants answered Plaintiffs' amended complaint on March 27, 2019. Discovery commenced shortly thereafter with a conference pursuant to Rule 26(f) and written demands. The parties then began producing documents and planning for party depositions following the initial pretrial conference held on April 1, 2019.

10.     In addition to party discovery, Plaintiffs also served several non-party subpoenas on JSP and members of the Steinlauf family. JSP is a privately-held company owned and controlled by the Steinlaufs. These subpoenas were tailored to obtain documentary information capable of proving or disproving whether JSP (or its nominees) were significant or large shareholders of Lannett during the Class Period.

11.     Plaintiffs received over 1,000 pages of internal documents from Lannett, including emails, draft contract terms, memoranda, and other reports. Plaintiffs also received stockholder ownership information from the Steinlauf family's broker. These materials strongly supported the conclusion JSP and/or its nominees was in fact a significant Lannett shareholder during the Class Period. Based on this information, it was apparent that Plaintiffs would face substantial obstacles in terms of establishing liability against Defendants. In all likelihood, Defendants would have succeeded at the summary judgment stage and secured a dismissal with prejudice.

12.     Given this critical liability issue, Plaintiffs decided that it was not worth the time, effort, of expense of continuing to litigate this action. Several key litigation events were imminent, including class certification proceedings and expert disclosures. The costs associated with these events alone would have been extremely expensive, not just for Plaintiffs but for Defendants as well. Accordingly, on behalf of Plaintiffs, we approached Defendants in an attempt to resolve the case through settlement.

## THE SETTLEMENT

13.     The Stipulation contains the full terms of the Settlement. The parties have also negotiated a separate Supplemental Agreement that allows Defendants to terminate the Settlement at their discretion if a certain portion of the Settlement Class requests to be excluded from the Settlement.

14.     The Settlement before the Court provides for: (i) a cash payment of $300,000; and (ii) payment of Notice and Administration Expenses (estimated to be $100,000).

15.     In exchange for these payments, Plaintiffs have provided a full release of all claims related to this Action to Defendants.

16.     The Stipulation also provides for a thorough notice program. Through the Claims Administrator, JND Legal Administration, will mail copies of the Notice to all potential Class Members. JND Legal Administration will also publish the Summary Notice once over a national newswire service, *PRNewswire*. JND Legal Administration will also create and maintain a website devoted to the administration of this Action and field telephone calls from potential claimants during normal business hours.

17.     The Notice contains the Plan of Allocation for this Action. The Plan of Allocation compensates all Class Members in a uniform manner. Depending on the number of Lannett shares held at the end of the Class Period, Class Members will receive certain amounts of compensation. The compensation received corresponds to the decline in the price of Lannett stock in response to the company's announcement concerning the JSP distribution agreement on August 17, 2018. The full terms of the Plan of Allocation are contained in the Notice.

## PRELIMINARY APPROVAL

18.     Although the payment to Settlement Class Members will be small (if the Settlement is approved), it still returns some level of compensation to shareholders that have been damaged. In our opinion, this is a good result in an otherwise bad situation. We also believe that it demonstrates Defendants' good will towards its shareholders and its business going forward. Plaintiffs and Lead Counsel support the Settlement and believe that it should be approved.

19.     In exchange for our efforts, Lead Counsel intends to seek an award of attorneys' fees in an amount equal to $75,000. This represents less than 20% of the total amount obtained under the terms of the Settlement (including $300,000 Settlement Amount plus estimated $100,000 of Notice and Administration Expenses). This percentage comports with Third Circuit precedent on this issue. Lead Counsel will also seek an award of litigation expenses not to exceed $17,500.

20.     When Lead Counsel files its motion for an award of attorneys' fees, the motion will be supported by supplemental information from Lead Counsel. This supplemental information will include time and expense information, including a description of the work performed by Class

Counsel, the hours expended by Class Counsel, and the hourly rates typically billed by Class Counsel.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of July 2019.

_____
Adam M. Apton