UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Robert Strougo, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Lannett Company, Inc., et al.<br><br>Defendants. | Case No. 2:18-cv-03635-MAK<br><br>Judge Mark A. Kearney |

**BRIEF IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Lead Counsel Is Entitled to An Award of Attorneys' Fees. .......... 2

B. The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method. .......... 4

C. The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check. .......... 6

D. Other Factors Considered by Courts in the Third Circuit Confirm That the Requested Fee Is Fair and Reasonable. .......... 6

E. Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement. .......... 14

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Abrams v. Lightolier, Inc.*,
50 F.3d 1204 (3d Cir. 1995) ..... 14

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..... 11

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ..... 11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ..... 3

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994) ..... 11

*Blum v. Stenson*,
465 U.S. 886 (1984) ..... 4, 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..... 2

*Fogarazzo v. Lehman Bros., Inc.*,
No. 03-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ..... 8

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ..... 3, 4, 6, 7

*Hall v. AT&T Mobility LLC*,
No. 07-5325 (JLL), 2010 WL 4053547 (D.N.J. Oct. 13, 2010) ..... 13, 14

*Hensley v Eckerhart*,
461 U.S. 424 (1983) ..... 7

*In re Apple Comput. Sec. Litig.*,
No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ..... 11

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) ..... 4, 6, 7, 13

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ..... 4

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ..... 2, 5

*In re Cigna Corp. Sec. Litig.*,
No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ..... 13

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ..... 8, 14

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) .......................................................................... 3, 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .............................................................................. 5

*In re Genta Sec. Litig.*,
No. 04-2123 (JAG), 2008 WL 2229843 (D.N.J. May 28, 2008)......................................... 8

*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)............................................................... 3, 5, 12, 13

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013).............................................................................. 5

*In re JDS Uniphase Corp. Sec. Litig.*,
No. CO2-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .................................. 11

*In re Linerboard Antitrust Litig.*,
MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ....................................................... 8

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................................. 10

*In re Ocean Power Techs., Inc. Sec. Litig.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ..................................... 4, 13

*In re Par Pharm. Sec. Litig.*,
No. 06-3226 (ES), 2013 WL 3930091 (D.N.J. July 29, 2013)............................................... 3

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012)........................................... 13

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................................. 12

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ............................................................... 4, 5, 6, 7

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001)....................................................................... 14

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012)......................... 5, 10

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02 168 (WHW), 2008 WL 906254 (D.N.J. Mar. 31, 2008) ........................................ 10

*In re Vicuron Pharm., Inc. Sec. Litig.*,
512 F. Supp. 2d 279 (E.D. Pa. 2007) .................................................................... 13

*In re Viropharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)............................................... 7, 14

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .......... 9

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......... 5

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987) .......... 11

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009) .......... 5, 10

*Milliron v. T-Mobile USA, Inc.*,
No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .......... 5

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .......... 4, 12

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .......... 11

*Schuler v. Meds. Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) .......... 3

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011) .......... 4, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 3

**Statutes**

15 U.S.C. §78u-4(a)(6) .......... 5

## I. INTRODUCTION

Levi & Korsinsky, LLP, Lead Counsel for Lead Plaintiffs Soe Wong and Michael Hoeltzel ("Plaintiffs"), and the Settlement Class, have successfully negotiated a Settlement in the amount of $300,000 in cash and plus up to an estimated $100,000 in administration costs to be paid by Defendants.[1] The proposed Settlement represents a very favorable recovery for the Settlement Class, especially when viewed in light of the risks and costs attendant to continuing with litigation. Accordingly, Lead Counsel request: (i) an award of attorneys' fees in the amount of $75,000 (18.75% of the Settlement Fund and Notice and Administration Expenses); and (ii) payment of litigation expenses incurred in prosecuting the Action, in the amount of $17,500.

As set forth in detail in the Declaration of Adam M. Apton in Support of Plaintiffs' Motion for Preliminary Approval of Settlement, dated July 12, 2019 (Dkt. No. 69-2) (the "Apton Decl."), the Settlement was achieved through the skill, experience, and effective advocacy of Lead Counsel. Lead Counsel vigorously pursued the claims in this Action for the benefit of the Settlement Class by reviewing and analyzing: (i) documents filed publicly by Lannett Company, Inc. ("Lannett" or the "Company") with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Lannett and Defendants; (iii) research reports issued by financial analysts concerning Lannett; (iv) other publicly available information and data concerning Lannett; (v) the review of approximately 1,000 pages of discovery produced by parties and non-parties; and (vi) the applicable law governing the claims and potential defenses. Lead Counsel also interviewed former Lannett employees, defended against Defendants' motions to dismiss, and consulted with experts on damages and loss causation issues.

Throughout the Action, the stakes have been high, the risks substantial, and the battles hard-fought. The likelihood of succeeding, and then recovering, was highly uncertain. Lead

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation of Settlement, dated as of July 12, 2019 (ECF No. 68) (the "Stipulation" or the "Stip.").

Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery. Lead Counsel faced substantial risks establishing liability, defeating defenses, and proving the amount of damages. Unfortunately for Plaintiffs, the content of the discovery documents received by them tended to undermine any viable theory of liability and created a substantial risk that they would not be able prove the Surviving Claims at the summary judgment stage and/or trial. Plaintiffs and Lead Counsel, however, succeeded in recovering $300,000 for the Settlement Class Members plus up to an estimated $100,000 in administration costs to be paid by Defendants.

More than 17,000 notices have been disseminated to the public detailing the terms of the Settlement and Lead Counsel's intent to seek attorneys' fees of up to $75,000 (18.75% of the Settlement Fund and Notice and Administration Expenses) of the Settlement Fund and up to $17,500 in reimbursement of litigation expenses, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. To date, there have been no objections to the Settlement or the requested payments to Plaintiffs and Lead Counsel.

Plaintiffs and Lead Counsel should be compensated for their hard work and commitment to the Action. Accordingly, they respectfully request that their motion for attorneys' fees and expenses and an incentive award be granted.

## II. ARGUMENT

### A. Lead Counsel Is Entitled to An Award of Attorneys' Fees.

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 197 (3d Cir. 2005) ("attorneys whose efforts create, discover, increase, or preserve a [common] fund are

entitled to compensation"); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009).[2]

Courts within the Third Circuit have consistently adhered to this rule. *See, e.g.*, *Schuler v. Meds. Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *Diet Drugs*, 582 F.3d at 540); *In re Par Pharm. Sec. Litig.*, No. 06-3226 (ES), 2013 WL 3930091, at *9 (D.N.J. July 29, 2013); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefits they have bestowed on class members.").

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (goal of percentage fee awards is to "ensur[e] that competent counsel continue to be willing to undertake risky, complex, and novel litigation"). Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provided "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").

---

[2] All internal quotations and citations are omitted unless otherwise noted.

### B. <u>The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method.</u>

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund. *See Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).

The Third Circuit has "several times reaffirmed that the application of a percentage-of-recovery method is appropriate in common-fund cases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1). Although the Third Circuit recommends that the percentage award be "cross-checked" against the lodestar method to ensure its reasonableness, *Sullivan*, 667 F.3d at 330, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.

Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . not exceed a

reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. 15 U.S.C. § 78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Cendant*, 404 F.3d at 188 n.7; *Rite Aid*, 396 F.3d at 300; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-55 (S.D.N.Y. 2005).

The requested fee of 18.75% of the Settlement Fund and Notice and Administration Expenses is reasonable under the percentage-of-recovery method. Although there is no general rule, courts in the Third Circuit have observed that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *Ikon*, 194 F.R.D. at 194 ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."). Fees most commonly range from 25% to one-third of the recovery. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same).

At less than 20%, the requested fee is equal to the percentage fee awards granted in many other comparable securities class actions within the Third Circuit and supports the reasonableness of the requested fee. A review of attorneys' fees awarded in class actions in the Third Circuit supports the reasonableness of the requested fee. *See Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of $13.5 million settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of $12.25 million settlement); *Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 154-56 (awarding 33% of $10.5 million settlement).

### C. **<u>The Requested Attorneys' Fees Are Reasonable Under the Lodestar Cross-Check.</u>**

The Third Circuit recommends that district courts use counsel's lodestar as a "cross check" to determine whether the fee that would be awarded under the percentage approach is reasonable and to avoid a "windfall" to counsel. *See Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[3]

Here, Lead Counsel devoted over 400 hours to the prosecution and resolution of this Action. Supplemental Declaration of Adam M. Apton ("Supp. Apton Decl."), ¶12. Lead Counsel's lodestar – which is derived by multiplying their hours spent on the litigation by each firm's current hourly rates for attorneys, paralegals, and other professional support staff – is over $300,000. *Id*. Accordingly, the requested less than one-fifth fee, which equates to $75,000 (plus interest on that amount at the same rate as earned by the Settlement Fund), represents a discount to Lead Counsel's lodestar.

Accordingly, the 18.75% fee request here is reasonable and would not provide counsel with a windfall.

### D. **<u>Other Factors Considered by Courts in the Third Circuit Confirm That the Requested Fee Is Fair and Reasonable.</u>**

The Third Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195, n.1. The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to

---

[3] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations"; (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained"; and (3) any "innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40).

The fee award factors "'need not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301). Indeed in cases involving large settlement awards, district courts may give some of the *Gunter* factors less weight, and emphasize (1) the complexity and duration of the case and (2) awards in similar cases. *Rite Aid*, 396 F.3d at 301.

An analysis of relevant factors further confirms that the fee requested here is fair and reasonable and should be approved.

**1. The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request.**

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016).

Here, Lead Counsel, on behalf of Plaintiffs, have secured a Settlement that provides for a substantial and certain payment of $300,000 plus an estimated $100,000 for the Notice and Administration Expenses. The Settlement is an excellent recovery because based on the discovery received, there was a real and substantial risk that the Litigation would have been dismissed with prejudice with no recovery for the Class. Supp. Apton Decl. at ¶¶4-6; *see also* Apton Decl. at ¶¶10-12.

The Settlement will also benefit a large number of investors. To date, the Claims Administrator has mailed over 17,000 Notice Packets to potential Settlement Class Members and their nominees. *See* Declaration of Luiggy Segura, ¶5. Accordingly, a large number of Settlement

Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig*., MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *order amended by* MDL 1261, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [Settlement]").

### 2. The Absence of Objections to Date Supports Approval of the Fee Request.

The Notice, which was sent to more than 17,000 potential Settlement Class Members and their nominees and disseminated over the internet, provided a summary of the terms of the Settlement and stated that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund. The Notice also advised Settlement Class Members that they could object to the Settlement or fee request and explained the procedure for doing so. No objections have been received.[4]

### 3. The Complexity and Duration of the Litigation Support Approval of the Fee Request.

Securities litigation is regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on multiple issues, including loss causation and damages. *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Genta Sec. Litig.*, No. 04-2123 (JAG), 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig*., No. 04-CV-525 (GEB), 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would be lengthy and costly to the parties.").

The Action alleged violations of the Securities and Exchange Act of 1934 ("Exchange Act"), raising a panoply of difficult legal and factual issues that required creativity and sophisticated analysis. The motion to dismiss was hotly contested, and the investigation that

---

[4] The deadline for submitting objections was December 5, 2019.

followed required careful review and analysis of public records and approximately 1,000 pages of discovery concerning the Surviving Claims. The discovery received from Defendants, however, raised significant risks concerning the case moving forward. Plaintiffs recognize that Defendants have denied the allegations in the Complaint and that they strongly dispute the central premise of the Complaint. In view of these factors, without a settlement, Plaintiffs and the Settlement Class face a very real risk in this case that they could recover far less than the Settlement Amount—or even nothing—without the Settlement – a particularly realistic possibility given the unfavorable information contained in the discovery documents Plaintiffs' received and reviewed. In addition, costly expert testimony concerning the materiality of Defendants' misstatements, loss causation, damages, and market efficiency would be crucial to Plaintiffs' case. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time.

Had this litigation continued, Plaintiffs, through Lead Counsel, would have been required to conduct extensive factual document and deposition discovery and substantial expert discovery (including preparation of expert reports and expert depositions). After the close of discovery, Defendants would undoubtedly have moved for summary judgment and would have vigorously challenged Plaintiffs' experts' testimony. Substantial time and expense would need to be expended in preparing the case for trial and filing and responding to motions *in limine*, and the trial itself would be extensive and uncertain.

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Even a victory at trial is not a guarantee of ultimate success . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.").

Considering the magnitude, expense, and complexity of this securities case – especially when compared to the real risk Plaintiffs' claims would not have survived if the litigation continued – Lead Counsel's fee request is reasonable.

**4. The Risk of Non-Payment Supports Approval of the Fee Request.**

Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave them uncompensated for their investment of time, as well as for their substantial expenses. This Court and others have consistently recognized that this risk is an important factor favoring an award of attorneys' fees. *See, e.g.*, *Schering-Plough*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 WL 4730185, at *8 (same); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02 168 (WHW), 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (same).

In undertaking this responsibility, counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during the course of this litigation and advanced or incurred over $15,000 in expenses in prosecuting this Action for the benefit of the Settlement Class.

The risk of no recovery in complex cases of this type is real. Indeed, even if Plaintiffs had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years. Lead Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success in contingent litigation, such as this, is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions

in expenses and received nothing for their efforts.[5] Indeed, even judgments initially affirmed on appeal by an appellate panel are no assurance of a recovery. *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and that such a result would be realized only after considerable and difficult effort. This strongly favors approval of the requested fee.

**5. The Time Devoted to This Case by Counsel Supports Approval of the Fee Request.**

Lead Counsel have collectively devoted over 400 hours to the prosecution and resolution of the Action. *See* Supp. Apton Decl. at ¶12. Since the initiation of the Action, Lead Counsel have vigorously pursued the claims, conducting a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) publicly available information, including SEC filings, press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (ii) analyst reports; (iii) other publicly available information and data concerning the Company; and (iv) approximately 1,000 pages of discovery. *See* Apton Decl. ¶¶3, 10-11. Lead Counsel also interviewed former Lannett employees, and consulted with experts on damages and causation issues. *Id.* at ¶3. Lead Counsel also: (i) researched and drafted a thorough amended complaint; (ii) fully briefed and successfully overcame, in part, Defendants' motion to dismiss;

---

[5] For illustrative examples, *see, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd*, 50 F.3d 6 (4th Cir. 1995) (directed verdict after plaintiffs' presentation of its case to the jury); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation); *In re Apple Comput. Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *In re JDS Uniphase Corp. Sec. Litig.*, No. CO2-1486 CW, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict after four weeks of trial).

(iii) exchanged initial discovery disclosures with Defendants; and (iv) participated in settlement negotiations. *Id*. at ¶¶4-12.

As noted above, Lead Counsel have expended over 400 hours investigating, prosecuting, and resolving this Action, resulting in a "lodestar" amount of over $300,000 at Lead Counsel's regular and current billing rates.[6] *See* Supp. Apton Decl. at ¶12. With respect to counsel's rates, Lead Counsel submit that they are comparable or less than those used by peer defense-side law firms litigating matters of similar magnitude. Lead Counsel's efforts for the benefit of the Settlement Class will continue, if the Court approves the Settlement. Lead Counsel will continue to work through the settlement administration process, assisting Class Members, and the distribution process, without seeking any additional compensation.

Lead Counsel respectfully submit that this *Gunter* factor weighs in favor of the requested attorneys' fee.

**6. The Requested Fee Is Within the Range of Fees Typically Awarded in Actions of This Nature.**

The requested fee of less than one-fifth of the Settlement Fund is within the range of fees awarded in comparable cases, when considered as a percentage of the fund or on a lodestar basis. Accordingly, this factor strongly supports approval of the requested fee.

**7. The Lack of Any Government Investigation and the Fact that All Benefits of the Settlement Are Attributable to the Efforts of Lead Counsel Support Approval of the Fee Request.**

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, because this can indicate whether or not counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, although the SEC had commenced an investigation into Liquid, the investigation did not produce any helpful evidence and, accordingly, the entire value of the Settlement achieved is attributable to the efforts

[6] Current rather than historical hourly rates were used, as permitted by the Supreme Court and other courts, to help compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

undertaken by Lead Counsel in this Action. This fact supports the reasonableness of the requested fee award. *See, e.g.*, *AT&T*, 455 F.3d at 173; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at *6 (E.D. Pa. July 13, 2007); *In re Vicuron Pharm., Inc. Sec. Litig*., 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007).

**8. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request.**

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. A 18.75% fee is consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at *29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g.*, *id.*; *Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum*, 465 U.S. at 903 (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Lead Counsel's requested fee of one-third of the Settlement Fund is fully consistent with these private standards.[7]

**9. The Skill and Efficiency of the Attorneys Involved Support the Fee Request.**

The skill and efficiency of counsel is "'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Hall v. AT&T Mobility LLC*, No. 07-5325 (JLL), 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

[7] Another factor the Third Circuit asks district courts to consider is whether the settlement contains "any innovative terms." *Diet Drugs*, 582 F.3d at 541; *Prudential*, 148 F.3d at 340. This Settlement does not, because Lead Counsel believe that an all-cash recovery is the best remedy for the injury suffered by the Settlement Class. In these circumstances, the lack of innovative terms "neither weighs in favor nor detracts from a decision to award attorneys' fees." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *6 (E.D. Pa. Nov. 9, 2012).

It required considerable skill to achieve the proposed Settlement for the benefit of the Settlement Class. Lead Counsel were required to contend with, among others, difficult issues of falsity, materiality, and scienter; and damages and loss causation issues. In particular, there were substantial risks to establishing falsity and scienter given the discovery received and Defendants' position that they did not knowing make any misrepresentations concerning the Surviving Claims.

With respect to "the experience and expertise" of counsel, as set forth in the firm resumes attached to the respective declarations of Lead Counsel, Lead Counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in securities cases throughout the country. *See* Supp. Apton Decl. at Exhibit B.

'"The quality of opposing counsel is also important in evaluating the quality of counsel's work.'" *Hall*, 2010 WL 4053547, at *19; *In re Datatec Sys.*, 2007 WL 4225828, at *7. Lead Counsel was opposed by Kirkland & Ellis LLP; and Fox Rothschild LLP, very skilled and highly respected defense firms representing Defendants. They spared no effort in the defense of their clients.

### E. <u>Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement.</u>

Lead Counsel also request reimbursement of $16,945.39 in expenses incurred in connection with the prosecution of this litigation. Counsel's fee declaration attest to the amount and accuracy of their expenses. Supp. Apton Decl. at ¶14. To date, there has been no objections to the request for reimbursement of expenses.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("[c]ounsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *ViroPharma*, 2016 WL 312108, at *18 (same); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax,

postage, witness fees, and hiring of consultants.”). The categories of expenses for which counsel seek payment here are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund. These expenses include fees for experts and consultants, travel expenses, and filing fees.

## III. CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys’ fees of 18.75% of the Settlement Fund and Notice and Administration Expenses, plus interest earned; and $17,500 in Lead Counsel’s litigation expenses.

Dated January 3, 2020

Respectfully submitted,

O'KELLY & ERNST, LLC

*/s/ Ryan M. Ernst*
Ryan M. Ernst (No. 202191)
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
Phone (302) 778-4000
Fax (302) 295-2873
rernst@oelegal.com

*Liaison Counsel for Lead Plaintiffs*

-and-

LEVI & KORSINSKY, LLP
Nicholas I. Porritt
Adam M. Apton
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Attorneys for Lead Plaintiffs Soe Wong and Michael Hoeltzel and Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 3, 2020.

*/s/ Ryan M. Ernst*
Ryan M. Ernst